United States District Court
Middle District of Florida
Jacksonville Division

**CHRISTINE BRENNAN WARNER
& AMANDA DENISE BRENNAN,**

　　　　*Plaintiffs,*

v.　　　　　　　　　　　　　　　　　　**No. 3:19-cv-1239-J-PDB**

**QUICKEN LOANS, INC.,**

　　　　*Defendant.*

---

# Order

　　　Christine Brennan Warner and Amanda Denise Brennan sue Quicken Loans, Inc., to quiet title to real property that once belonged to their parents, now deceased, and to divest Quicken of its mortgage on the property. To their complaint, they attach a homestead order forming the basis of their claim, the mortgage, and an assignment of the mortgage. Quicken answered the complaint, admitting the factual allegations, denying the legal conclusions, and asserting defenses that include unjust enrichment. Both sides now request judicial notice of matters of public record and move for judgment on the pleadings.

## I.　　Standard of Review

　　　Pleadings are the complaint, the answer, and any exhibit to either.[1] Fed. R. Civ. P. 7(a), 10(c). "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

---

[1]Pleadings also are an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and "if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a).

In deciding a motion for judgment on the pleadings, a court may consider the substance of the pleadings, *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Jt. Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998), any judicially noticed fact, *id.*, and any document that is undisputed as to its authenticity and central to the claim, *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 n.12 (11th Cir. 2014).[2] A court must accept as true material facts in the nonmovant's pleading and view them in the light most favorable to the nonmovant. *Perez*, 774 F.3d at 1335. Where there are no disputed material facts and the moving party is entitled to judgment as a matter of law, judgment on the pleadings is appropriate. *Id.*

## II.   Judicial Notice

At any stage and on its own, a court may judicially notice a fact that cannot be reasonably disputed because it is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned.[3] Fed. R. Evid. 201(b)–(d). Under that standard, a court may judicially notice a matter of public record. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278–79 (11th Cir. 1999).

Each side asks the Court to judicially notice certain facts as matters of public record.[4] Docs. 17, 23. Because those facts are matters of public record, and with no

---

Here, the daughters replied to Quicken's answer despite that the Court had not ordered one. *See* Doc. 14. With no order directing the reply, the reply is not part of the pleadings and will not be considered in deciding the motions for judgment on the pleadings. Even if considered, the result is the same.

[2]If a party presents a matter outside the pleadings and the court does not exclude it, the court must treat the motion as one for summary judgment and provide the parties a reasonable opportunity to present all pertinent material. Fed. R. Civ. P. 12(d).

Here, neither side contends the Court should treat the motions for judgment on the pleadings as motions for summary judgment.

[3]If a court takes judicial notice of a fact before notifying a party, the party still may be heard upon request. Fed. R. Evid. 201(e).

Here, neither side has objected to the other side's request for judicial notice.

[4]Specifically, Quicken asks the Court to judicially notice the following facts as matters of public record: that the father and his siblings deeded the property to him and

argument to the contrary, the Court will consider them in deciding the motions for judgment on the pleadings.

## III.   Facts

The property is commonly described as 2721 Algonquin Avenue, Jacksonville, Florida 32210-5905, and legally described as:

> LOT 9, BLOCK 44, ORTEGA, ACCORDING TO THE PLAT THEREOF AS RECORDED IN PLAT BOOK 3, PAGE 40, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA.

> LESS AND EXCEPT:

> THE NORTHWESTERLY 6 FEET OF THE SOUTHWESTERLY 100 FEED OF LOT 9, BLOCK 44, ORTEGA ACCORDING TO PLAT THEREOF AS RECORDED IN PLAT BOOK 3, PAGE 40, OF THE CURRENT PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA.

Doc. 3-3 at 5.

---

the mother, as reflected in three recorded deeds; that the father and mother were continuously married from when they acquired the property to when she died, as reflected in an affidavit he filed in the probate court (and presumably in other public records); and that the father petitioned the probate court to determine homestead status for the property, as reflected in a petition he filed in the probate court. Doc. 17 at 1–9. (Quicken mistakenly filed a petition for administration of an intestate Florida resident, Doc. 17 at 8–9, rather than the petition to determine homestead status. The Court will consider the pertinent petition, which is on the public docket in the probate court and attached to this order.) Quicken also asks the Court to judicially notice the existence and contents of the mortgage and the assignment. Doc. 17 at 1, 10–30. Judicial notice is unnecessary because the documents are attached to the complaint, are undisputed as to authenticity, and are central to the claim. *See Perez*, 774 F.3d at 1340 n.12.

The daughters ask the Court to judicially notice facts concerning how the county tax collector taxed the property before the probate court entered the order, as reflected in a tax bill for 2014; after the probate court entered the order but before their father died, as reflected in tax bills for 2015 to 2018; and after their father died, as reflected in a tax bill for 2019. Doc. 23-1. They also ask the Court to judicially notice that within a week of the mortgage, a closing company paid delinquent taxes on the property, as reflected in the tax bill for 2017. Doc. 23-1 at 11. The latter fact may be pushing the limits of or beyond judicial notice, but Quicken has not objected to judicially noticing that fact, and that fact does not affect the outcome.

The father and his siblings deeded the property to him and his wife through warranty deeds recorded on December 28, 1995.[5] Doc. 17 at 4–6. The father and mother were married when they acquired the property and remained married without interruption until she died on June 18, 2014. Doc. 17 at 7.

She died intestate, survived by him and the daughters (the plaintiffs here). Doc. 3-1 at 2–3. During the probate of her estate, he petitioned the probate court to determine the homestead status of the property, using a form provided by Florida Laywers Support Services, Inc. (Bar Form No. P-4.0410, Jan. 1, 2015), for requesting the homestead status of property where a decedent died intestate. Att. at 1–4. He contended: she is survived by him as a spouse who has not waived his homestead rights; at the time of her death, they had owned and resided on the property; the property had constituted their homestead within the meaning of Article X, Section 4 of the Florida Constitution; and upon her death, title to the property and the constitutional exemption from the claims of her creditors had inured to him by right of survivorship. Att. at 1. He did not include the daughters' names, birthdates, and relationship with the decedent as heirs having an interest in the property but did include their names along with unpaid creditors in a list of a dozen possibly interested persons or entities. Att. at 1–2. He requested an order "determining that the [property] constituted the exempt homestead of the decedent, title to which, upon [her] death, descended and the constitutional exemption from claims inured"; "directing the personal representative to surrender possession of the [p]roperty"; and "directing that the personal representative shall have no further responsibility with respect to the [property]." Att. at 2.

On July 23, 2015, based on the petition, the probate court entered a homestead order using a form provided by Florida Lawyers Support Services, Inc. (Bar Form No.

---

[5]The deeded interests appear to total more than 100 percent. *See generally* Doc. 17 at 4–6. Neither side raises this as an issue.

P-4.057, Jan. 1, 2015), for a situation where the decedent dies intestate leaving a spouse and lineal descendants:

ORDER DETERMINING HOMESTEAD
STATUS OF REAL PROPERTY
(intestate – spouse, lineal descendants – exempt from claims)

On the petition of [the husband] for an order determining homestead status of real property (the "Property"), all interested persons having been served proper notice of the petition and hearing, or having waived notice thereof, the court finds that:

1. The decedent died intestate and was domiciled in Duval County, Florida;

2. The decedent was survived by a spouse;

3. The decedent was survived by one or more lineal descendants;

4. At the time of death, the decedent owned and resided on the real property described in the petition; it is

ADJUDGED that the … Property … constituted the homestead of the decedent within the meaning of Section 4 of Article X of the Constitution of the State of Florida.

ADJUDGED FURTHER that title to the Property descended, as of the decedent's date of death, and the constitutional exemption from claims of the decedent's creditors inured to the decedent's surviving spouse … as to a life estate, and a remainder interest vested in the lineal descendants of the decedent in being at the time of the decedent's death: [the daughters].

ADJUDGED FURTHER that the personal representative is authorized and directed to surrender all of the Property which may be in the possession or control of the personal representative, to the decedent's surviving spouse and the personal representative shall have no further responsibility with respect to it.

Doc. 3-1 at 2–3.

On July 24, 2015, the homestead order was recorded in Official Records Book 17245, Page 1502 of the Public Records of Duval County, Florida ("Public Records"). Doc. 3 ¶ 3(A).

On April 18, 2018, the father mortgaged the property to Mortgage Electronic Registration Systems, Inc. Doc. 3 ¶ 3(B); Doc. 3-2; Doc. 12 ¶ 3(B). On April 24, 2018, the mortgage was recorded in the Official Records Book 18361, Page 1647 of the Public Records. Doc. 22 at 3. Within a week of the mortgage, a closing company paid delinquent taxes on the property. Doc. 23-1 at 11.

On August 12, 2019, Mortgage Electronic assigned the mortgage to Quicken. Doc. 3 ¶ 3(D); Doc. 3-3; Doc. 12 ¶ 3(D). On August 19, 2019, the assignment was recorded in the Official Records Book 18903, Page 1833 of the Public Records. Doc. 3 ¶ 3(D); Doc. 3-3; Doc. 12 ¶ 3(D).

On August 17, 2019, the father died.[6] Doc. 3 ¶ 3(C); Doc. 12 ¶ 3(C).

Before the homestead order, the county tax collector levied taxes against the property in the father's and mother's names. Doc. 23-1 at 1–3. After the order but before the father died, the county tax collector levied taxes against the property in his name as a "life estate" and the name of one daughter. Doc. 23-1 at 4–15. After the father died, the county tax collector levied taxes against the property in the name of both daughters. Doc. 23-1 at 16–18.

## IV.   Jurisdiction

A federal district court has diversity jurisdiction over any civil action between "citizens of a State and citizens or subjects of a foreign state" in which the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). In an action to quiet title, the value

---

[6]The pleadings do not indicate whether the father died intestate. Whether he did does not affect the outcome, which depends on his interest in the property when he mortgaged it.

of the property is the amount in controversy. *Frontera Transp. Co. v. Abaunza*, 271 F. 199, 201 (5th Cir. 1921); *Orton v. Mathews*, 572 F. App'x 830, 831 (11th Cir. 2014).

Quicken removed the action from state court based on diversity jurisdiction, contending it is a Michigan citizen, one daughter is a Florida citizen, one daughter is a Virginia citizen, and the property is worth more than $75,000. Doc. 1. Quicken points to the original mortgage loan amount of $155,000 and the 2018 tax bill valuing the property at $103,154. Doc. 1-1 at 48–68. The daughters do not dispute jurisdiction. The Court is satisfied it has jurisdiction.[7]

## V.    Law and Analysis

A federal court exercising diversity jurisdiction applies federal procedural law and state substantive law. *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002). The motions for judgment on the pleadings require application of federal procedural law and Florida substantive law.[8] Both sides agree.

---

[7]Under the doctrine of prior exclusive jurisdiction, where one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res. *Marshall v. Marshall*, 547 U.S. 293, 311 (2006); 13 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 3631 (3d ed. 2020). The doctrine applies only where there are multiple separate in rem proceedings or where there is continuing state-court in rem jurisdiction that attached before a state action was removed to federal court. *Welk v. GMAC Mortg., LLC*, 850 F. Supp. 2d 976, 996–97 (D. Minn. 2012). The doctrine does not apply where a single action starts in state court and then is removed to federal court. *Id.*

Here, despite that an action to quiet title under Florida law is an action in rem, *see Publix Super Mkts., Inc. v. Cheesbro Roofing, Inc.*, 502 So. 2d 484, 486–87 (Fla. 5th DCA 1987) (superseded by statute on other grounds), the doctrine does not apply because neither circumstance is present. Neither side raises this issue or contends otherwise.

[8]Under Florida law, the law to be applied in determining the disposition of property on the death of a person is the law in effect as of the date of the person's death. *Jones v. Jones*, 412 So. 2d 387, 388 (Fla. 2d DCA 1982).

Here, the pertinent law in effect on the date of the mother's death—June 18, 2014— remains substantively the same.

Quicken contends, the daughters do not dispute, and the Court concludes that the parents, when both were alive, held the property as tenants by the entireties by operation of the deeds conveying the property to them.[9] *See Bridgeview Bank Grp. v. Callaghan*, 84 So. 3d 1154, 1155 (Fla. 4th DCA 2012) (real property titled in names of spouses is presumed to be tenancy by entireties absent express contrary language or fraud; presumption is irrebuttable);[10] Fla. Stat. § 689.11(1)(b) ("An estate by the entireties may be created by the action of the spouse holding title … [c]onveying to both spouses.").

Quicken also contends, the daughters do not dispute, and the Court concludes that when the mother died, the property passed in fee simple to the father as the surviving spouse not by descent but by operation of the law applicable to a tenancy by the entireties. *See Bendl v. Bendl*, 246 So. 2d 574, 576–77 (Fla. 3rd DCA 1971)

---

[9]Under Florida law, where a married couple holds property as a tenancy by the entireties, each spouse holds all of it—not just a share of it—and the property therefore belongs to neither spouse individually; instead, "each spouse is seized of the whole." *Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 53 (Fla. 2001).

Property held as a tenancy by the entireties possesses six characteristics: (1) unity of possession; (2) unity of interest; (3) unity of title; (4) unity of time; (5) survivorship; and (6) unity of marriage. *Id.* at 52.

Here, when both parents were alive, the property possessed those characteristics.

[10]The purpose of the irrebuttable presumption, which Quicken emphasizes in its filings, is this:

Applying a rule of construction for real property instead of a burden-shifting presumption can be explained by the real property transaction itself. The use of a rebuttable presumption applied to the title to real property would cause significant problems with titles, which are recorded and serve as notice to the world of the ownership of property. Which title insurer could feel secure in insuring property having a conveyance to a husband and wife in the chain of title, if that title could be rebutted by evidence extrinsic to the deed itself? The integrity of the title to real property could be called into question when titles could be overturned in litigation by rebuttable presumptions.

*Bridgeview*, 84 So. 3d at 1156.

("Property held as an estate by the entireties … does not pass by descent but vests by operation of law in the surviving spouse upon the death of the co-owner[.]").

The crux of the dispute concerns the effect of the homestead order. Quicken argues the order is a brutum fulmen as to ownership interests in the property, emphasizing the probate court was without jurisdiction to adjudicate interests in the property because the property had passed to the father outside of probate. The daughters argue the order provided their father a life estate interest in the property and them remainder interests. Their father's mortgage, they continue, could encumber only his interest—the life estate—and that interest was extinguished upon his death, "removing any title for which [the mortgage] could attach." Doc. 3 ¶ 5.

Although not cited in the homestead order or the petition requesting the order, both are under Florida Probate Rule 5.405, titled, "Proceedings to Determine Protected Homestead Real Property." The rule "establishes the procedure by which the personal representative or any interested person may petition the [probate] court for a determination that certain real property constituted the decedent's protected homestead property, in accordance with article X, section 4 of the Florida Constitution." Fla. Prob. R. 5.405(a), comm. notes.

That state constitutional provision protects a homestead by exempting it from a forced sale or lien and providing that the exemption inures to the owner's surviving spouse or heirs. Fla. Const. art. X, § 4(a), (b). The provision also restricts the owner's ability to devise the homestead, including by prohibiting the owner from doing so if the owner is survived by a spouse or minor child (though the owner may devise the homestead to the owner's spouse if there is no minor child). *Id.* § 4(c). If the owner unlawfully devises the homestead, section 732.401, Florida Statutes, kicks in to provide that it descends "in the same manner as other intestate property," though if a decedent is survived by a spouse and one or more descendants, "the surviving spouse shall take a life estate in the homestead, with a vested remainder to the descendants in being at the time of the decedent's death per stirpes." Fla. Stat

§ 732.401(1). Importantly here, that provision does not apply to "property the decedent owned in tenancy by the entireties." *Id.* § 732.401(5). In accord with that limitation, the probate code defines "protected homestead" by reference to the constitutional homestead provision but adds that, for the probate code, "real property owned in tenancy by the entireties … is not protected homestead." *Id.* § 731.201(33). "The rules regarding devise and descent of transfer restricted homestead property do not apply to property owned as tenants by the entireties … because at the death of one spouse, property owned as tenants by the entireties passes to the surviving spouse automatically, outside of probate—therefore, there is no devise or descent of the homestead property." Joseph M. Percopo, *The Impact of Co-Ownership on Florida Homestead*, FLA. B.J. 32, 37 (2012) (internal footnotes omitted).

Under Rule 5.405, "An interested party may file a petition to determine protected homestead real property owned by the decedent." Fla. Prob. R. 5.405(a). The petition must be verified and state the date the decedent died; the decedent's county of domicile at the time of death; the names of the decedent's surviving spouse and surviving descendants; a legal description of the property; and "any other facts in support of the petition." Fla. Prob. R. 5.405(b). "The court's order on the petition shall describe the real property and determine whether any of the real property constituted the protected homestead of the decedent." Fla. Prob. R. 5.405(c). "If the court determines that any of the real property was the protected homestead of the decedent, the order shall identify by name the person or persons entitled to the protected homestead real property and define the interest of each." *Id.*

A proceeding under Rule 5.405 is permissive, not required. *In re Estate of Hamel*, 821 So. 2d 1276, 1280 (Fla. 2d DCA 2002). Ordinarily, the proceeding is initiated for the "practical purposes" of changing record title to the property or releasing the personal representative of any obligation regarding the property. *Id.* The proceeding is akin to an action for declaratory relief to explain or to clarify existing rights rather than to determine new rights. *Id.* While homestead status

exempts property from liabilities to which it otherwise would be subject, it does not change the nature of the ownership interest. *Johns v. Bowden*, 68 Fla. 32, 45 (Fla. 1914); *see also In re Reinhard*, 377 B.R. 315, 319 (Bankr. N.D. Fla. 2007) (explaining acquisition of property interest and acquisition of homestead status are "distinctly different"; the latter confers no additional property interest or rights in property).

A probate court has no jurisdiction over property not cognizable in probate, and any judgment is binding only on the rem over which the probate court has jurisdiction. *Spitzer v. Branning*, 135 Fla. 49, 53 (1938); *accord Carlton Fields, P.A. v. Locascio*, 81 So. 3d 611, 612 (Fla. 3d DCA 2012). "It, therefore, follows that if the judgment of the probate court purports to bind the rem over which the court is without jurisdiction the judgment is not binding on such rem and is a nullity in that regard." *Spitzer*, 135 Fla. at 53. Where a probate court is without jurisdiction to dispose of property, no party's conduct can confer jurisdiction. *Id.* Thus, the "mere inclusion of the description of property in pleadings or orders in probate proceedings cannot confer jurisdiction of the rem." *Id.*

For its argument, Quicken relies on *Mullins v. Mullins*, 274 So. 3d 513 (Fla. 5th DCA 2019). There, a mother bequeathed her residence as life estate interests to her two sons and as a remainder interest to her daughter. *Id.* at 515. The mother died, leaving her three children as her survivors. *Id.* The probate court entered an order under Rule 5.405, determining the residence was homestead, was properly devised, and was exempt from estate administration and creditor claims. *Id.* The order reflects the homestead was devised in equal shares to the three children without mention of the life-estate interests. *Id.* The siblings had consented to the form of the order. *Id.* at 516.

Later, after a dispute arose over one brother's maltreatment of the property, the other brother and the sister filed a complaint to partition and sell the property, pointing to the homestead order to contend the siblings owned it in three equal parts.

*Id.* The opposing brother argued their mother's will established the siblings' interest in the property, not the homestead order. *Id.*

The Florida appellate court agreed with him. *Id.* at 517. The court held the homestead order created no new rights and the siblings' consent to the form of the order could not have altered the property rights established by the mother's will. *Id.* The court observed that homestead rights exist and continue regardless of an order under Rule 5.405 confirming the exemption and emphasized a proceeding under Rule 5.405 is permissive, ordinarily is initiated for practical reasons, and merely results in an explanation or clarification of existing rights. *Id.*

In rejecting an argument that consent to the form of the order altered the property rights established by the mother's will, the court observed heirs and beneficiaries may formally agree to alter their prescribed interests in an estate, but the agreement must be in writing and comply with section 733.815, Florida Statutes, which provides "interested persons may agree among themselves to alter the interests, shares, or amounts to which they are entitled in a written contract executed by them." *Id.* at 517–18 n.1. The court found no contract existed among the three siblings that would alter their interests, shares, or amounts to which they were entitled under their mother's will. *Id.* at 518.

The court added the homestead order is not a title transaction as defined by section 712.01(3), Florida Statutes (2011), which reads, "any recorded instrument or court proceeding which affects title to any estate or interest in land and which describes the land sufficiently to identify its location and boundaries."[11] *Id.* The court held that, under that definition, the homestead order is not a title transaction. *Id.*

---

[11] *Mullins* referenced an older version of the definition of "title transaction." *See Mullins*, 274 So. 3d at 518 (quoting *Cunningham v. Haley*, 501 So. 2d 649, 652 (Fla. 5th DCA 1986) ("A title transaction within the meaning of this act is defined in section 712.01(3), Florida Statutes, and means any *recorded* instrument or court proceeding

For their argument, the daughters rely on *Cavanaugh v. Cavanaugh*, 542 So. 2d 1345 (Fla. 1st DCA 1989). There, a father bequeathed his property to his spouse as a life estate interest and to one of their four children as a remainder interest. *Id.* at 1347. When the father died, the property was probated in that manner. *Id.* at 1348. Years later, after the mother died, the other three children, fearing their sibling's fiancée ultimately would take over the property, sued, contending the property was homestead that had to descend under § 732.401(1). *Id.* at 1349. The trial court found the property had not possessed homestead status, and the three children appealed. *Id.* at 1347. The appellate court decided three issues.

First, the appellate court held the trial court erred in finding the property had not possessed homestead status. *Id.* at 1350. Second, the appellate court held res judicata did not apply, rejecting the argument that probate of the estate foreclosed the opportunity to assert the property had been homestead. *Id.* at 1351. The appellate court recognized a judgment in rem is regarded as "an exception to the rule of res judicata limiting the conclusiveness of a judgment to the parties to the proceeding." *Id.* at 1352. The appellate court observed that, on one hand, a probate court has jurisdiction to consider and determine whether property possesses the status of homestead, but, on the other hand, as concerns the interest in, or title passing to the surviving spouse and lineal descendants, the homestead is not an asset of the estate,

---

which *affects* title to any estate or interest in land and which describes the land affected with legal sufficiency.")).

Effective to June 30, 2000, Florida revised the definition of "title transaction" to mean "any recorded instrument or court proceeding that affects title to any estate or interest in land and that describes the land sufficiently to identify its location and boundaries." Fla. Stat. § 712.01(3) (2000). Florida revised the statute twice more since, but the definition has not changed. Only the location of the definition within the statute changed.                            Fla.                            Stat. § 712.01(7) (2018).

The recent version of the statute makes no change to the meaning of "title transaction." It now requires a "title transaction" to describe the land "sufficiently to identify its location and boundaries," rather than merely describe the land with "legal sufficiency."

the homestead passes automatically under section 732.401, and neither the probate court nor the personal representative had jurisdiction over it. *Id.* at 1351. Third, the appellate court held that estoppel and laches, depending on equities developed and weighed on remand, may prevent the three siblings from now "pursuing a homestead claim in a collateral proceeding." *Id.* at 1353. The appellate court effected the policy consideration that "all questions of succession to property be authoritatively settled," whether the property is homestead or otherwise, and emphasized the concern of allowing the three siblings to "collaterally attack the probate judgment by asserting a homestead claim years after the probate judgment had become final." *Id.*

Here, considering only the substance of the pleadings, the judicially noticed facts, and the documents that are undisputed as to authenticity and central to the claim, Quicken is entitled to judgment on the pleadings, and the daughters are not.

Under Florida law, because the parents owned the property as tenants by the entireties, when the mother died, the property passed to the father automatically by operation of law, the property was not an asset of the estate, and the probate court was without jurisdiction to effectuate a change in the ownership interest in the property. Indeed, in his petition seeking the homestead order, the father did not ask the probate court to effectuate a change in ownership interest in the property. And the homestead order, read in view of the father's petition and the limited purpose of a Rule 5.405 proceeding—as explained in *Mullins*—did not purport to effectuate a change in ownership interest in the property. Its language about the husband's life estate interest and the daughters' remainder interests merely assumed without deciding as a litigated or substantive matter the property descended under section 732.401.

The daughters' reliance on *Cavanaugh* is unavailing. There, the probate court adjudicated rights according to the father's will, and the appellate court, considering the desirability of finality of probate adjudications, recognized the availability of the equitable defenses of estoppel and laches to challenge that adjudication years later.

*See Cavanaugh*, 542 So. 2d at 1353. Here, unlike there, the probate court did not adjudicate ownership interests in the property through the homestead order.

The daughters pose a hypothetical question: what if they and their father signed a written agreement as part of the probate proceeding to provide him with a life estate interest in the property and them with remainder interests in the property? They do not plead such an agreement exists as one would expect in a quiet title action, much less provide one. Quicken acknowledges that if such an agreement exists, it would control the outcome. The hypothetical is just that; a motion for judgment on the pleadings is decided on the substance of the pleadings, the judicially noticed facts, and the documents that are undisputed as to authenticity and central to the claim, not on a hypothetical set of facts posed by the responding party.

The daughters assert issue preclusion.

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1036 (11th Cir. 2014) (internal quotation marks omitted). A federal court will give preclusive effect to a state court judgment if the state courts would do so themselves and the litigants "had a full and fair opportunity to litigate their claims and the prior state proceedings otherwise satisfied the applicable requirements of due process." *Id.* (internal quotation marks omitted). Under Florida law, issue preclusion applies if an identical issue has been fully litigated by the same parties or their privies and a court of competent jurisdiction has rendered a final decision. *Id.* (*citing Essenson v. Polo Club Assocs.*, 688 So. 2d 981, 983 (Fla. 2d DCA 1997)). Florida courts enforce "with rigor" the requirement that issue preclusion extends only to an issue that was actually adjudicated. *Crowley Mar. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 931 F.3d 1112, 1129 (11th Cir. 2019).

Here, at a minimum, issue preclusion does not apply because whether the homestead order provided the father a life-estate interest in the property and the daughters remainder interests—the issue here—was never litigated during the probate proceedings. Moreover, because the probate court lacked jurisdiction over the property, no judgment purporting to bind the property could be binding.[12] *See Spitzer,* 135 Fla. at 53.

While arguing Quicken is bound by the homestead order, the daughters also argue Quicken lacks standing to challenge the validity of the homestead order, contending Quicken was a third party on notice of the order (through the order itself and the tax bills) when it acquired its interest. The argument fails because Quicken is challenging not the validity of the order but the consequence of the order on the mortgage Quicken holds.

In short, the daughters acquired no interest in the property through the homestead order, Quicken's mortgage interest stands, and their quiet-title claim fails as a matter of law.

The daughters' motion for judgment on the pleadings fails for an additional reason. A plaintiff is not entitled to judgment on the pleadings if the defendant's answer raises an affirmative defense that, if proved, would defeat the plaintiff's recovery. 5 CYC. OF FED. PROC. § 15:192 (3d ed.). Quicken's affirmative defense of unjust enrichment precludes judgment on the pleadings for the daughters; the Court ordered no reply to the affirmative defense; denial of the affirmative defense would

---

[12]Under Florida law, the misapplication of the law to the facts and circumstances that took place is not a proper basis for estoppel. *Clifton v. Clifton,* 553 So. 2d 192, 194 n.3 (Fla. 5th DCA 1989).

Here, as stated, the homestead order did not purport to effectuate a change in ownership interest in the property. Had it, the order would provide no basis for estoppel because the court would have been adjudicating interest in property outside the estate.

require development of additional facts; and proof of the affirmative defense would impact the daughters' claim.

## VI.    Conclusion

The Court:

1.    **grants** the parties' unopposed requests to judicially notice certain facts, Docs. 17, 23;

2.    **grants** Quicken's motion for judgment on the pleadings, Doc. 18;

3.    **denies** the daughters' motion for judgment on the pleadings, Doc. 22; and

4.    **directs** the clerk to enter judgment for Quicken Loans, Inc., and against Christine Brennan Warner and Amanda Denise Brennan, and close the file.

**Ordered** in Jacksonville, Florida, on May 1, 2020.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

Attachment

c:    Counsel of record